We'll go on to case number two, number 21-1809, Nanogas Technologies v. Clifton Roe. Good morning, Your Honors. My name is Don Darnell. I'm the attorney for the appellant in this case, Clifton Roe. Good morning. Your Honors, this appeal arises from the trial court's ruling in this matter on a motion for reconsideration where the trial court found that Mr. Roe was to turn over his shares in Nanogas after Nanogas had levied those shares in its attempt to enforce the monetary part of an arbitration agreement. It's worth noting that Nanogas' motion for reconsideration was related to the two different awards in the case. One award was for $500,000. That award has some language in it that says Roe can pay that in a manner as he so chooses. The other award doesn't say that. And you agree that the $150,000 award is not subject to that language as the district court found, correct? We did not appeal that, so we do not disagree, I guess it's fair to say. You're not challenging that? We're not challenging that. Your challenge to the $150,000 is you think the other language in the agreement entitles him to keep his stock. I think so. I think that's the crux of our appeal. We think that the plain language of the arbitration award requires Roe to remain a shareholder. We think that for several reasons. And initially, the trial court agreed with us. The trial court found in its prior decision that the arbitration decision read as a whole, I'm quoting, the arbitration decision read as a whole further supports the court's conclusion because the arbitrator discussed that in lieu of royalties, Roe would benefit from his invention as a shareholder of Nanogas. And the court obviously reversed itself in a subsequent order, but as I was saying, it's important to note that Nanogas appealed that $150,000 payment as not being protected by, in a manner as Roe chooses, they didn't ask the court to reverse itself on the turnover of shares. The court kind of extraneously just decided that. So here we are. Mr. Darnell, what are the shares worth today? Your Honor, we don't know because Mr. Roe has been kind of locked out of the company. He's not been to a shareholder meeting, I think, in at least a couple of years because of these proceedings. The initial, I believe the initial assessment was that they're worth in the neighborhood of perhaps even a million dollars. Where was that assessment? The only assessment I've seen in the record is the $117,000. That's the assessment they make now, Your Honor. I'm relying upon memory in the arbitration proceedings. It's probably puffery, but I think that's a claim they made based upon projections of sales that admittedly has never occurred. I don't know if they're worth much at all, quite frankly. The company has not been successful. Can we return to your assessment of the arbitrator's comment on Mr. Roe and his stocks? There's really only one sentence there. Yes. And it says it should be noted that in this regard that Roe remains a shareholder, a major shareholder in Nainer Gas, and that as such he could potentially benefit in the future. It says that he could benefit, and it says it should be noted. It doesn't say that he should benefit or that he must benefit. So how do you read this as conferring a right on Mr. Roe of permanent shareholder status? Two reasons, Your Honor. First, the arbitrator discusses that he considered a royalty on the technology to Mr. Roe. But instead of doing that, he decided not to do a royalty and to have Roe remain as a shareholder in the company. Did he say he opted to have Roe remain as a shareholder? He didn't enter an award saying Roe shall forever remain a shareholder or be entitled to be a shareholder. That's fair, Your Honor. He did not. But what he did do is you can note that under the section of award, that's a paragraph under where it addresses what the awards are, he does discuss this as a shareholder. But where does he say shall remain? He doesn't say shall. That's correct. He says Roe remains. That's a big difference because before that he talks about the fact that Roe should get something and that he's decided that what he should get should be a form of an offset against the award to Nano Gas. And then he goes on to talk about what else he considered. But nothing says he shall or he must remain a shareholder. It's just at the fact he was noting that he was and he could potentially benefit from that. Yes. That's a better reading of... I misstated that, Your Honors. I'm sorry. So how under that reading, how does that say that your client has to keep those stocks, that they can't force the sale of the stock? Well, I think that the arbitrator states that Roe remains a shareholder. It's under the award, Roe remains a shareholder, and he could benefit from those shares. And in other words, maybe Nano Gas becomes successful and maybe there's some financial benefit to being a shareholder. And that may all be true. But again, how does that equate with saying you have to keep the shares of stock? Well, it doesn't. I agree. It doesn't say he has to keep the shares of the stock. For example, Roe could possibly sell his shares of the stock. But I think if, Your Honors, read the four corners of the arbitrator's ruling, he is laying out an equal award for both sides that includes, that contemplates Roe continuing to be a shareholder and to enjoy the financial benefits from that relationship. You know, the arbitrator said that Mr. Roe could pay off the $500,000 award in the manner of his choosing. But he didn't say the time frame of his choosing. So the $500,000 award is really illusory, isn't it? If Mr. Roe can unilaterally choose when he will satisfy the award? I don't know that it's illusory, Your Honor. I think the word manner encompasses timing, the form, and the place, perhaps, and perhaps other things as well. But I don't think it's illusory. And Mr. Roe's deposition was taken in this manner. And Mr. Roe testified pretty specifically that the manner that he chose was to, excuse me, to use these financial benefits that he anticipated from Nanogas and to use that money to pay off this judgment. He also indicated that he could wait until he died and have Nanogas be paid that way. So is it your position that that's fully supported by the language of the arbitrator and he's perfectly able to do that? Well, it's hard to know what the arbitrator was thinking when he wrote that. Well, if he really meant that he could provide for payment of the award via his estate, wouldn't the award have made some provision in that regard? You know, debtors are sometimes required to purchase life insurance in order to secure their financial obligations, you know, for an example. Yes, that's entirely accurate, Your Honor. If he had meant that Mr. Roe could simply pay this from his estate, he would have said so. But if he meant that Roe had to pay it in payments or Roe had to pay it next month or next year, 10 years, he would have wrote that too. But that's not what he wrote. He wrote in the manner as Roe chooses. He left it. So you think in the manner he chooses means a reasonable interpretation would be if he chooses not to pay it at all, that's okay? No, I'm not submitting that to the court. So then what's the timeframe? If it's in a manner in which he chooses based on the language in the award, how should we interpret what the timeframe is? Because if we say it's okay if he waits until his death, that's essentially saying he doesn't have to pay it. Right. Well, I don't think the arbitrator thought about timing. I think the arbitrator was focused on the manner, but the manner could be timing. Should we send it back? It go back to the arbitrator if it's ambiguous? That's a possibility. I don't know that arbitrator is even alive, Your Honor. I did wonder, I must say, why seeing all this, the parties didn't ask for reconsideration from the arbitrator. I mean, you can do that, can't you? You can ask for clarification, Your Honor. And in fact, in this case regarding the definition of technology, Randall Guess did that. And they chose not to take any issue with the ownership of Mr. Rowe's shares or the issue about the $500,000. It seems like in the manner of being interpreted in terms of a timeframe didn't come up until the citation to discover assets and your client's deposition when he said, essentially, I don't have to pay if I don't want to under that language. It seemed like that was a surprise to Nanogas and something not anticipated based on the language. Is that a fair characterization? I don't know that they could reasonably be surprised. He testified that he would pay that from benefits he would receive from Nanogas. Maybe they were surprised by that. He also testified he didn't have to pay anything on it if he didn't want to under his interpretation of the arbitrator's award. Well, he said both. I think that's it. It seemed from the record that that's what caught Nanogas by surprise. And by that time, the window for clarification at close, the arbitrator left this open for three months after the award. Yes. And a fair amount of time had passed by the time they took his, I forget what you call them here in Illinois, but creditors exam. And it occurred to me regarding the $500,000, even the $150,000 that the arbitrator and Nanogas, anybody else in the room when we did this arbitration would be fully aware that Mr. Rowe would not have the kind of resources available to him to pay this kind of judgment and that. I do have one question. Your time really is fleeing, but I will give you time for rebuttal because we're asking a lot of questions. But Judge Coleman's June 5th, 2020, decision on the request for a turnover order references her 2019 order declaring the lawsuit pending before Judge Packholt irrelevant to this case. Is there any light you can shed on her rationale in this regard and how it bears on Nanogas' ability to seek a turnover as to either that action or Mr. Rowe's as yet unfiled suit for shareholder oppression? Your Honor, we filed the shareholder oppression case and it was dismissed because the parties were required to be turned over. So he's no longer a shareholder. Your Honor, I never thought that the case pending before Judge Packholt had any bearing on this case at all. That was a case where Mr. Rowe had filed a couple of inventions and Nanogas filed an assignment unilaterally with the United States Patent and Trademark Office. They filed a counterclaim that Mr. Rowe had somehow violated the arbitration agreement. But I don't see that they have, it has any impact or relevance to this case. What's the status of that case? I know there was some suggestion here that if he was successful in that case, any award he got could be used to satisfy the outstanding debt here. That case, uh, uh, Nanogas filed a summary judgment motion, I believe last, remember you may fail me, but I believe it was last December. And that's pending, Your Honor. It's still pending? Yes. Okay, um, as I said, I will give you some time for rebuttal, but thank you very much, Mr. Darno. We have to go on to Mr. Rice. May it please the Court, Your Honors. My name is Howard Toplinsky, and I am arguing on behalf of Nanogas. There's absolutely a way in which Mr. Rowe could remain a shareholder for as long as he, as long as there's a, uh, Nanogas, and that's to pay the judgment. If he pays the judgment, then obviously there won't be any asset to go ahead and levy, which is exactly what we're fighting over. There's certainly nothing in the arbitrator's award that I believe, um, you've recognized that promises or, um, gives him permanent shareholder status. It just doesn't. May I ask about that? If he, if Mr. Rowe has the money to pay the judgment, if you all determine that based on your citation to discover assets, why is Nanogas going after his shares? Because the citation to discover assets revealed two assets at that time. That was in 20, December of 2019, I believe. That was these 200 shares, 200,000 shares of Nanogas, um, in addition to these causes of action that he had, which we also believe were assets that we also asked to be turned over. Um, and, and Judge Roedner, getting back to your question about what Judge Packold, why it may not have had any impact, um, that's because in the June 5th order, Judge, uh, $650,000 could not be, um, could not be used to satisfy. I don't know for certain, but I suspect that may be why, why there was no consideration to the turnover of the cause of action as well. Mr. Klinsky, if we affirm the district court's August 8th, 2021 reconsideration order, in other words, affirm that the outstanding stock can be used to pay off the $150,000 amount, is your appeal of the June 5th order moot? No, because we are appealing the portion of the June 5th order that says we can't seek to enforce $500,000 of the judgment. For example, Your Honor. In, you mean in the manner of language? In the manner of language, because I agree, and we've said this all along, that renders the arbitration award, and quite frankly, Judge Coleman's judgment, illusory. Because as we've argued, Mr. Roe can kick the can down the road for as long as he wants. And with respect to him satisfying this judgment upon his death, I think a creative argument could be made that unless Mr. Roe provided so, you know, for the payment of this in an estate plan or in a will, then the argument is, well, he didn't choose that manner in which to satisfy the judgment as well. What in the arbitrator's award helps us construe in the manner of? Sure. And is that something that the court can do? This is a double question. Is that something the court could do, or is that something in light of our law, including United Steel, on construing awards that we should send back to the arbitrator to do? I think that the court can do it, and also a reason why I believe, Your Honor, is correct that this issue didn't come up until the Citation to Discovery Assets, which I took. And yes, I was quite surprised by the position. And that was, I believe, three years after the arbitrator had rendered the award. But we don't have to send an award back to the arbitrator, because the award's not ambiguous if it's not susceptible to, forget about equally reasonable interpretations, two reasonable interpretations. And the reason that I believe that the award being read in the manner in which Mr. Rowe reads it is not reasonable is because there is no way. There is no way around his choice. And his choice may be not to satisfy, you can come into possession of another asset. I choose not to satisfy it with that asset. I think one of the examples I put in our reply is that, you know, when you serve somebody with a Citation to Discovery Assets in Illinois, it serves as an injunction, for example, over certain assets. Well, Mr. Rowe could decide that he doesn't choose to pay off this judgment or satisfy this judgment by any of the assets. So he can go ahead and ignore the injunction. It makes no sense. But getting back to your question, Your Honor, what I think happened, and reading the entire award and the entire paragraph, certainly when it says, when it allows him to pay damages in the amount of $1.5 million with such payment to be made first, I don't think the arbitrator contemplated that Mr. Rowe wouldn't satisfy the award. He's saying, Mr. Rowe, you owe Nanogast $1.5 million for all of these things that you did. Here's how you're going to pay it. First of all, we're going to give you a million dollars as a credit toward it, as a set off. And then you pay the rest of it. How you so choose. Yeah. Let me make sure I understand something. Yes, Your Honor. In terms of the turnover order to satisfy the $500,000 award, does that mean you're not going to pay the $2,000? No. Now we're talking, I take it only, about the pending lawsuit before Judge Tackold, right? Now that the order of the... Yes. And at some point in time, I will likely be able to take another citation to discover assets of Mr. Rowe to see what other assets he may have accumulated in the... That's what I wanted to ask you. Are there any other assets on the table apart from the nanogas stock? None that I'm aware of based upon his sworn testimony. None? None that I'm aware of or that we're aware of. Okay. So you want the lawsuit in front of Judge Tackold to be assigned to you, right? Correct. And how will that lawsuit be valued for purposes of satisfying Mr. Rowe's debt? You know, okay, it seems to me that nanogas has an interest in minimizing the value of that lawsuit, both as the defendant and as Mr. Rowe's creditor, whereas Mr. Rowe would have an interest in maximizing its value procedurally and practically. Yeah. How is the value going to be assigned to that suit? I don't have to tell you that that's a very good question, Your Honor, but that's a very good question. We are being sued for a finite award. Some of it is injunctive. My client, of course, has to pay attorney's fees, I suppose, to defend the case and has had to. If the case is assigned to nanogas, that would certainly be something that they would no longer have to do. But I asked Mr. Rowe at his citation what sort of a value he placed on the lawsuit, and predictably, and I think honestly, he said, I don't know. We'll have to wait and see what happens. So you want that case assigned to you that you would step in his shoes and pursue it? Well, it's an asset. Would I rather have cash? Absolutely, Your Honor, but there were only two and we know for sure that he's holding as an asset and a lawsuit cause of action is an asset. How we value it? Why would you want the lawsuit assigned to you as opposed to getting a lien on any judgment that Mr. Rowe might receive in the lawsuit? I mean, if you're saying you want the lawsuit assigned to you, then you would essentially be suing yourself, which doesn't make sense. Or deciding not to sue yourself. Well, that's, yeah, which maybe that's worth a lot more than a million dollars. Who knows? I think that's probably the point of it, Your Honor. But yes, getting an assignment of a judgment, which we don't have any confidence will happen. We certainly don't believe that a judgment would be entered against us, a monetary judgment, in that other case. How do we not read this as a clever attempt to really sever all ties between Nanogas and Mr. Rowe? If you attach and seize his shares, he's not a shareholder. I understood you all to be saying the shareholder action has been dismissed, but even if he wanted to bring another shareholder action, he couldn't. He's got no shares. Then you get his lawsuit in front of Judge Packold, so now he's not suing you anymore. Is this, rather than a real attempt to seize any other assets Nanogas might discover, is Nanogas really just trying to shake Mr. Rowe off? Well, no. The judgment that was entered, excuse me, Your Honor, is a very real thing. The company sustained a very real loss. The arbitrator valued it at a million dollars after set off. The only way, the only things that we have been told, excuse me, that this man has in terms of assets are the two things that I've identified. And would there be the added benefit of after years and years and years of litigation with Mr. Rowe that perhaps we wouldn't be faced with that anymore? Absolutely. He can avoid that by finding a way to pay the judgment though. He can remain a shareholder. But there have been only two assets identified. And one day, if I'm permitted to seek more than $150,000 in this judgment, I suspect that we'll be back at it again. Did you ever have a settlement conference on the case? Did you ever try to settle it? That was exactly my question. We're on the same wavelength. I believe that there was. That might have predated my involvement, Your Honor. I know that there have been many attempts to settle other claims. And we, of course, participated in the Seventh Circuit mediation unsuccessfully here. Can I ask you, unless you're finished answering the question about settlement, can you go back to Judge St. Eve's question? You were in the process of answering that, why you thought it would be preferable for us to define in the manner so chooses, rather than sending it back to the arbitrator. I don't think you finished your answer there. Because I think we can. I think we can. Because one interpretation, the only reasonable interpretation we believe makes it so that the award isn't illusory. It could be sent back. I echo some of Mr. Darnell's comments. I believe the arbitrator is still alive, but he is no longer in the area. I know that. How would you interpret this based on the language? How would you interpret in the manner of, based on the language in the agreement, which is what we'd be constrained by? Sure. Not by, in the manner of meaning it's got to be paid. It's got to be paid. So would we put a time period on it? Does that mean it has to be paid today? It has to be paid 2021? It has to be paid 2022? It doesn't mean that it can never, doesn't ever have to be paid. You know that, Your Honor, you're correct. It didn't say that. But as I said, reading this award, it's pretty clear to me that the arbitrator didn't contemplate that the award wasn't going to be paid. And I think that's where the disconnect here is. My God. Yeah, I'm thinking of Dickens right now, but never mind. Yes. Interesting, because number one, we're dealing with post-judgment proceedings, which always interesting. And secondly, the interpretation of this award. So unless there are any other questions, I'll... Yeah, it's not in the record, but how is Nanogas doing? I mean... I would rather not say that publicly if it'd be all right, Your Honor. Of course, it's all right. It's not on any of the stock exchanges? No, it's private. It's a small company. Yeah. All private. It's a private company that is trying to do one thing and has not certainly hit the mother load with it. Yeah. Okay. Well, thank you very much. Thank you very much. Your Honors, this technology... Hold on a minute. Yeah. You had asked for five minutes. We'll give you three. That's more than enough. Thank you, Your Honor. Okay. Thank you. I'm sure you want to escape. I'm sure you want to escape. No, it's actually a pleasure being here, Your Honor. I'm from Chicago and I like being in this makes bubbles really small so they stay in liquids and it has all kinds of benefits to mankind. It's really a great technology. Mr. Rowe invented it. He's the inventor of this device that makes this possible. It's entirely reasonable for Mr. Rowe to have contemplated that Nanogas would use this device to make money and that he would receive the benefits of those shares and be able to pay this judgment. That's what he testified to. Is he still working on this project? No. Mr. Rowe, one of the contemplated uses of this technology was to take H2S out of oil. And Mr. Rowe has discovered another way to take H2S out of oil, which is very successful, which is not related to Nanogas. It's not related to nanobubbles, I should say. Mr. Rowe would love to re-engage. If it's very successful, if there's another meeting of all of you, shall we say, will he have more assets than he had at your last foray? Mr. Rowe is not an owner of a company that owns that product. He's an inventor only, Your Honor. Does he have a license on it, though? No. Did he sell it to them? He assigned it as part of his employment agreement. So the reason I bring this up is because that's the manner that Mr. Rowe chose. He believed this company, because his invention is, this invention could, if it was applied to water like it should be, it could change the fate of countries that have water problems. But people are trying to use it for oil, which I think is a mistake. But in any event, I don't think this court has to interpret the word manner because I think it's very clear. I don't think it needs interpretation. I think the arbitrator was pretty clear about what he intended that Mr. Rowe would, as a shareholder, have benefits and that Mr. Rowe might even, he might have even contemplated that Mr. Rowe would use those benefits to pay this judgment. But I don't think it needs interpretation. I think what the arbitrator wrote on both the appeal, related to the appeal and the cross appeal, in my view, and I ask the court to accept my view, is it's not ambiguous. Neither, neither, neither phrase that he remains a shareholder, that he pays the judgment as he, in a manner as he chooses. I don't think they're ambiguous. I don't think they need interpretation. I don't think it needs to go back to the arbitrator. I think they should just be enforced as they are written. That's all I have. Thank you, Your Honor. Thank you very much to both Mr. Glinsky and you, Mr. Darnell, and the case will be taken under advisement.